DOBSON *v.* DOBSON.

1. HUSBAND AND WIFE — MORTGAGES — FORECLOSURE — DEFENSES —HAZY PROMISES AS TO FUTURE NO DEFENSE.

   In a suit to foreclose a mortgage given by a married woman upon her separate estate to secure a note given by herself and husband to plaintiff who had advanced a considerable sum of money to pay creditors of a corporation, the stock of which was largely owned by the husband, mere hazy promises as to the future, made by plaintiff, that he would assume the active management of the corporation, but not made to induce, or even in connection with, the giving of the mortgage, *held*, insufficient to constitute a defense.

2. SAME—PAYMENT—COLLATERAL.

   Defendant's contention that plaintiff had had the use of certain stock of the corporation when it was turned over to a third party who thereupon assumed the debts of the corporation, and thus had secured his own release from his indorsement of the corporation's note, and was in effect to plaintiff as if the loan for which the mortgage was given was paid, cannot be sustained where it appears that the plan of selling said stock and repaying plaintiff's loan was not carried out, but that it was turned over by defendant's husband to secure his own release as well as plaintiff's from indorsements upon which they were jointly liable.

Appeal from Alpena; Emerick (Frank), J. Submitted October 21, 1920. (Docket No. 73.) Decided December 21, 1920.

Bill by Russel T. Dobson against Inez L. Dobson and others for the foreclosure of a mortgage. From a decree for plaintiff, defendant Inez L. Dobson appeals. Affirmed.

*C. H. & G. M. Lehman,* for plaintiff.

*D. W. Closser,* for appellant.

CLARK, J. From a decree for the foreclosure of a mortgage defendant Inez L. Dobson has appealed. In the beginning of the year 1914, the Alpena Echo Publishing Company, a Michigan corporation, was in financial straits. The capital stock, $15,000, divided into 1,500 shares, was owned substantially by defendant William B. Dobson. Some of the creditors were pressing for immediate payment. Plaintiff, a brother of said defendant, was a creditor to the amount of $4,000. The brothers and others to become interested in the enterprise agreed that one-fourth of the shares of the capital stock of the company should be transferred to plaintiff in payment of his claim, that one-fourth of the shares should be sold to Dayton W. Closser and one-fourth should be transferred to Mr. Closser, in trust, to be sold to business men of Alpena, the proceeds to be paid to defendant William B. Dobson. It was also agreed that the remainder of the shares should be transferred to John Haggerty, in trust, in the hope that they might ultimately be sold to Alexander J. Groesbeck.

Transfers of the shares were made as agreed to plaintiff and to Mr. Closser and certain of the shares were sold in Alpena. A certificate was later issued in the name of Mr. Haggerty, but a sale to Mr. Groesbeck was not made, although in June, 1914, the parties were still hopeful that Mr. Groesbeck would purchase. At this time it was imperative that a creditor be paid $2,120 and that said defendant have $250 to pay several claims in Alpena. Defendant William B. Dobson applied to plaintiff for a loan of $2,370. Plaintiff made the loan and on June 3, 1914, received of the defendants William B. Dobson and Inez L. Dobson, his wife, their note for the amount, which note was secured by a mortgage of real estate executed by Mrs. Dobson. The bill was filed to foreclose this mortgage.

The mortgage refers to a collateral agreement of the same date (Exhibit G), which is as follows:

"This agreement made this third day of June, 1914, between William B. Dobson, Inez L. Dobson and Russel T. Dobson, witnesseth as follows:

"Whereas, February eighteenth, 1914, William B. Dobson assigned three hundred seventy-five shares of stock of the Alpena Echo Publishing Company of Alpena, Michigan, in the name of John Haggerty, and the same has been transferred on the books of said Alpena Echo Publishing Company, which stock was taken by Russel T. Dobson, as agent of William B. Dobson, for delivery to Alex. Groesbeck, who before said transfer agreed to pay the sum of three thousand seven hundred fifty dollars therefor, and, whereas, the said Alex. Groesbeck has neglected to take said stock and pay for the same, and it may be necessary for the said Russel T. Dobson to guarantee the said Groesbeck against the sustaining of any loss other than the use of the money by reason of the decrease in value of the property of the Alpena Echo Publishing Company of Alpena, Michigan, and whereas, the said Russel T. Dobson has advanced the sum of two thousand three hundred seventy dollars to W. B. Dobson to apply on the said payment in behalf of the said Alex. Groesbeck; and, whereas, William B. Dobson and Inez L. Dobson have joined in a promissory note dated June third, 1914, calling for the payment of two thousand three hundred seventy dollars in one year from date, and the said Inez L. Dobson has given a mortgage of lot nine (9), block five (5), George N. Fletcher's first addition to the village (now city) of Alpena, Michigan, to secure the payment of said note, and whereas, the said William B. Dobson and Inez L. Dobson hereby guarantee the said Russel T. Dobson against any loss he may sustain by reason of his guaranteeing the said Alex. Groesbeck against sustaining any loss other than the use of the money by reason of the decrease in value of said property of the Alpena Echo Publishing Company of Alpena, Michigan.

"It is hereby mutually agreed that any money paid for said stock shall be applied upon the repayment of said two thousand three hundred seventy dollars to said Russel T. Dobson until the said sum of two thou-

sand three hundred seventy dollars shall be repaid to him and when so paid said note shall be delivered up and cancelled and the balance of one thousand three hundred eighty dollars shall be turned over to the said William B. Dobson.

"It is further agreed that when the said two thousand three hundred seventy dollars shall have been so paid, said mortgage shall only continue in force and effect to secure the performance of the carrying out of the guarantee herein and aforesaid, and the said parties agree that said guarantee shall extend for one year from date hereof, and be automatically renewed, together with the note and mortgage, unless such renewal be waived in writing, it being understood that said guarantee shall run until the said stock is disposed of in such manner as shall relieve the said Russel T. Dobson from the aforesaid guarantee to the said Alex. Groesbeck.

"In witness whereof the respective parties have hereto set their hands and seals the day and year first above written.

"WILLIAM B. DOBSON,  (L. S.)
"INEZ L. DOBSON,       (L. S.)
"RUSSEL T. DOBSON,
"By DAYTON W. CLOSSER,
"His duly authorized agent.

"In presence of
"RAGNA LARSON,
"VIRGINIA C. EMERSON."

A letter of plaintiff (Exhibit D) inclosing check for the loan stated substantially the terms for the collateral agreement. As time went on the brothers became liable as indorsers to a considerable amount for debts of the company and in July, 1915, Fred N. Potter acquired by purchase all of the corporate shares, being 375 shares owned by plaintiff, 375 shares owned by Mr. Closser, 375 shares either sold in Alpena or held in trust by Mr. Closser for defendant William B. Dobson, and 375 shares "the Haggerty-Groesbeck stock" owned by defendant William B. Dobson. By the transfer the brothers were relieved from said liability as indorsers in about equal amounts.

The trial judge clearly and correctly states and disposes of the defenses in the case. We quote with approval from his opinion:

"To this foreclosure bill Mrs. Dobson interposes two defenses, namely:

"*First:* She says she only made the mortgage because of, and in reliance upon certain representations or promises made by the plaintiff, and these she states in her answer and cross-bill, as follows:

"That Russel T. Dobson would assume the active management of the enterprise and would devote two or three days in every two weeks to the enterprise, and that Alex. J. Groesbeck would take and pay for a one-fourth interest in the stock of the corporation, amounting to $3,750.

"These alleged representations of Russel T. Dobson are not shown to have been made to induce, or even in connection with, the giving of the mortgage. In their nature they are too uncertain and indefinite to constitute a defense, and, indeed, are not representations at all, but rather hazy promises as to the future. I reject them as a defense.

"*Second:* Defendant Inez L. Dobson further says that plaintiff had the use of, that is, converted the so-called 'Haggerty-Groesbeck stock' when he used it by turning it over to Potter and so secured his own release from his own indorsement of the corporation's $2,000 note at the Alpena National Bank. That it was the same in effect to plaintiff as if Groesbeck had paid in his money for the stock and this money had been paid over by the company to repay to plaintiff the $2,370 secured by the mortgage in suit.

"I cannot assent to this position. Russel T. Dobson only turned over to Potter to secure his release from his indorsements at the bank his own one-fourth of the stock and not the 'Haggerty-Groesbeck stock' which he never owned, but which William B. Dobson always owned and held until he (William B.) passed it over to Potter to secure his own release from his own indorsements upon the same liabilities as Russel.

"Russel, as to the Haggerty-Groesbeck stock, acted merely as the agent of William B., and so it is stipulated in the writing. (Exhibit G.)

212—Mich.—43.

"It was not Russel, but William B. Dobson, in effect and in fact, who transferred the Haggerty-Groesbeck stock to Potter in consideration that the latter pay the debts of the Echo Publishing Company, and thereby secure the release from their respective indorsements not only of Russel, but of William B. as well, and for the same amounts.    And I think it is manifest there is nothing in the guaranty agreement of June 3, 1914 (Exhibit G), nor in Russel·T. Dobson's letter of transmittal (Exhibit D) in which he stipulates that he is to receive his $2,370 from the money expected to be received from Groesbeck which gave Inez L. Dobson any lien, or other right to have the Groesbeck stock held or used to protect her mortgage.

"But, rather, on the contrary, Russel T. Dobson expressly stipulated that the money expected to be received from Groesbeck for that stock should first be applied for his protection to repay his loan of $2,370, and by Exhibit G, Inez L. Dobson expressly contracted to that effect.

"The plaintiff is entitled to a decree for the foreclosure of the mortgage, the terms of said decree to be settled upon the usual notice."

The decree is affirmed, with costs to the plaintiff against the appellant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.